# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIE DAVIS, | : | CIVIL NO. 3:12-CV-2181 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| J.E.THOMAS, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This matter, which comes before the Court for consideration of a motion to dismiss, or in the alternative, for summary judgment, filed by the defendants, asks us to consider claims that are identical to matters which were previously raised by this inmate-plaintiff in a prior lawsuit. Davis v. Bledsoe, No. 3:12-CV-1294. In that prior case, we found that Davis' claims were legally flawed in fundamental ways that compelled dismissal of those claims. As was the case in Davis' prior lawsuit, we find that the claims made here also fail as a matter of law. Therefore, we recommend that the defendants' motion to dismiss, or in the alternative for summary judgment, be granted.

With respect to this motion, the undisputed material facts are as follows:

Willie Davis, a federal inmate housed in the Special Management Unit (SMU) of the United States Penitentiary, Lewisburg, alleges that the defendants, the warden and a supervisory captain, violated his constitutional rights through their allegedly inadequate response to a prison grievance that Davis filed in July of 2012. Specifically, Davis, who suffers from asthma, contends that on June 8, 2012, he experienced an asthma attack after staff dispersed "chemical munitions" in his housing unit as part of an effort to quell an inmate disruption elsewhere in the prison. (Doc. 34.) On this occasion, Davis alleges that he was taken to Health Services and was treated for asthma. (Id.) However, following this episode, Davis submitted a grievance that asked that a sign be placed on his cell door instructing staff to remove him from the area before OC spray was used in his housing unit, a measure which, if implemented, would have potentially endangered staff and other prisoners by revealing to other inmates the staff's tactical response plans in the event of future inmate disturbances. (Id.)

According to Davis, Warden Thomas and Captain Taggart violated his rights when they refused to grant his grievance, and declare his cell block an OC spray -free zone. (Id.) Davis further contends that the failure to honor this grievance led to a subsequent exposure to OC gas by Davis on June 30, 2012. (Id.) However, in

denying Davis' grievance, defendants Thomas and Taggart followed the medical; guidance they received from prison medical staff. This medical guidance confirmed that Davis suffers from a moderate-persistent asthma condition. (Doc. 34, ¶22.) However, medical staff report that Davis is being treated for this ailment without the medical necessity for a prison transfer or imposition of measures like those demanded by Davis which would hobble and limit prison staff in responding to inmate disruptions in Davis' housing unit. Specifically, Davis is prescribed a first line therapy regimen consisting of an albuterol inhaler, and a steroid inhaler with instructions to use two puffs, two times per day. (Id., ¶24.) Davis is permitted to have both inhalers in his possession, (Id.,¶25), but is frequently noncompliant with his prescribed dose of two puffs, two times per day, refusing to follow the instructions he receives from medical staff. (Id., ¶¶25-30.)

Despite his noncompliance with his medications, tests performed by medical staff in November 2012 reveal that Davis' lung function falls within the normal range. (Id., ¶¶31-32.) Moreover, Davis has received treatment on several occasions for wheezing associated with the disbursement of OC gas in the area of his cell, including the use of steroid injection, nebulizer breathing treatment. (Id., ¶37.) Davis has also been educated on a number of occasions concerning access to care and has been advised to have an officer or other staff contact the medical department if he is having difficulty with his asthma for any reason, including secondary exposure to OC gas.

(Id., ¶38.)  According to medical staff, at no time was Davis' health at serious risk of harm as a result of exposure to OC gas.  (Id., ¶39.)  He has continuously been treated for his asthmatic condition, will continue to receive appropriate treatment, and in the opinion of prison medical staff there is no medical need to transfer Davis to another facility.  (Id., ¶¶40-41.)

Thus, in this lawsuit, Davis now seeks to hold Warden Thomas and Captain Taggart personally liable to him for more than $1,000,000 in damages, (Doc. 1), but does not allege that these defendants played any role whatsoever in the June 2012 incident in which he suffered an asthma attack.  Moreover, Davis does not dispute that he received immediate, and apparently appropriate, medical care after the June 2012 asthma attacks he experienced, and Davis presents no complaints regarding the adequacy of the medical treatment he received.  Indeed, Davis 'complaint does not name any of the medical or correctional staff who were actually involved in these two episodes as defendants.  Instead, Davis sues only the warden and captain simply because he has apparently concluded that the defendants' failure to accept his request that a sign be placed on his cell door instructing staff to remove him from the housing unit prior to using chemical agents constituted a failure to take any protective measures to prevent the plaintiff from being subjected to deliberate indifference, after it was brought to their attention, and, therefore, the defendants intended to continue

to subject the plaintiff to deliberate indifference. (Id.) Davis takes this position even though prison medical staff insist that his demands are not medically necessary.

In filing this action Davis also ignores that fact that he previously lodged identical claims against the former warden at Lewisburg in a lawsuit which was dismissed by this court. Davis v. Bledsoe, No. 3:12-CV-1294. Thus, Davis' current complaint simply repackages allegations which were previously found to be insufficient as a matter of law.

The defendants have now filed a motion to dismiss, or in the alternative for summary judgment, which argues that, on these facts, the two prison supervisors named as defendants in this action cannot be held personally liable for their processing of Davis' grievance or their instructions to Davis to work with medical staff to address future medical concerns relating to incidental contact with these chemicals agents. (Doc. 31.) Davis, in turn, has filed a motion to dismiss this defense motion, (Doc. 36.), which essentially argues that the defendants are not entitled to a judgment in their favor as a matter of law. (Doc. 31.) These motions have been fully briefed and are ripe for resolution.

For the reasons set forth below, it is recommended that the defendants' motion be granted, and Davis' motion be denied.

## II.   Discussion

### A.   Standard of Review-Motion to Dismiss, or in the Alternative, Summary Judgment

Defendants have framed their motion as one seeking dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56.  When a party moves to dismiss, but where "matters outside the pleadings are presented to and not excluded by the court, the motions shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(d).  Typically, when a court converts a motion to dismiss into a motion for summary judgment under Rule 56, notice must be given to all parties of the court's intent to do so.  Id.; Garcia v. Newtown Twp., No. 09-CV-3809, 2010 U.S. Dist. LEXIS 20380, 2010 WL 785808, at *3 (E.D. Pa. March 5, 2010).  However, if a motion to dismiss has been filed with an alternative request for summary judgment, the Court of Appeals of the Third Circuit has found that the alternative filing is sufficient to "place the parties on notice that summary judgment might be entered." Latham v. United States, 306 F. App'x 716, 718 (3d Cir. 2009) (citing Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996)).  Accordingly, we find that it is appropriate to treat defendants' motion as one for summary judgment, and we find further that plaintiff has responded to the motion accordingly.

Rule 56 provides that judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see also Davis v. Mountaire Farms, Inc., 453 F.3d 554, 556 (3d Cir. 2006) (summary judgment appropriate only if there are no genuine issues of material fact). In considering a motion for summary judgment, a court must view the evidence and draw all inferences in the light most favorable to the non-moving party, id., and may grant summary judgment only if no reasonable juror could find for the non-movant, Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on

assertions made in the pleadings, legal memoranda, or oral argument." <u>Berckeley Inv.</u> <u>Group. Ltd. v. Colkitt</u>, 455 F.3d 195, 201 (3d Cir. 2006); <u>accord</u> <u>Celotex Corp. v.</u> <u>Catrett</u>, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. <u>Celotex</u>, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. <u>Anderson</u>, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. <u>Id.</u> at 252; <u>see</u> <u>also</u>, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." <u>A.W. v. Jersey City Pub.</u> <u>Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." <u>Countryside Oil Co., Inc.</u> <u>v. Travelers Ins. Co.</u>, 928 F.Supp. 474, 482 (D.N.J.1995). This rule applies with

particular force to parties who attempt to rely upon hearsay statements to establish

material issues of fact which would preclude summary judgment. With respect to such

claims, it is well-settled that: "In this circuit, hearsay statements can be considered on

a motion for summary judgment [only] if they are capable of admission at trial."

Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir.

2000), citing Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17

(3d Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a
> court may only consider evidence which is admissible at trial, and that a
> party can not rely on hearsay evidence when opposing a motion for
> summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561
> (E.D.Mo.1996). Additionally, a party must respond to a hearsay
> objection by demonstrating that the material would be admissible at trial
> under an exception to hearsay rule, or that the material is not hearsay. See
> Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The
> mere possibility that a hearsay statement will be admissible at trial, does
> not permit its consideration at the summary judgment stage. Henry v.
> Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa.

Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to

avoid summary judgment. Therefore, where a party simply presents inadmissible

hearsay declarations in an attempt to establish a disputed material issue of fact, courts

have typically rebuffed these efforts and held instead that summary judgment is

appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL

2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104,

2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)."[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the

nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. Under the Local Rules, the failure to follow these instructions and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis). A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. <u>See Sanders v. Beard</u>, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); <u>Thomas v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## B.    Davis' Claims Fail

Judged against these benchmarks, Davis' complaint fails to state a claim against Warden Thomas or Captain Taggart, the two prison supervisors who advised Davis to work with medical staff to address future medical concerns relating to potential incidental exposure to chemical agents.

### 1.    Res Judicata, Claims Preclusion, and Collateral Estoppel Apply Here and Bar Davis' Claims

At the outset, Davis' current complaints fail, because they fail to acknowledge the fact that these precise claims have been previously considered, and rejected, by this court in <u>Davis v. Bledsoe</u>, No. 3:12-CV-1294.  Given this prior ruling, dismissing a virtually identical complaint filed by Davis, in our view the *res judicata*, collateral estoppel and issue preclusion doctrines apply and compel dismissal of the claims that are made by Davis in this complaint.  Collateral estoppel, *res judicata* and issue preclusion are doctrines which play a vital role in litigation.  It has long been recognized that "[t]he doctrine[] of . . . collateral estoppel, now  . . termed . . . issue preclusion, 'shar[es] the common goals of judicial economy, predictability, and freedom from harassment....' <u>Gregory v. Chehi</u>, 843 F.2d 111, 116 (3d Cir.1988). Generally speaking, the . . . doctrine of issue preclusion, 'precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted.' <u>Melikian v. Corradetti</u>, 791 F.2d 274, 277 (3d

Cir.1986)." Electro-Miniatures Corp. v. Wendon Co., Inc. 889 F.2d 41, 44 (3d. Cir.1989)(citations omitted).[1]

The parameters of these doctrines, which preclude relitigation of certain issues, have been defined by the United States Court of Appeals for the Third Circuit in the following terms:

> Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979). In its classic form, collateral estoppel also required "mutuality"-i.e., that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding. Parklane Hosiery, 439 U.S. at 326-27. Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary. See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 (1971); Parklane Hosiery, 439 U.S. at 329. For . . . non-mutual issue preclusion [] to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action. See Parklane Hosiery, 439 U.S. at

---

[1] Defendants have also argued that the closely-related doctrine of res judicata, or claim preclusion, also applies to bar Plaintiff's claims int his case. Under *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980). *Res judicata* is generally viewed as "claim preclusion," whereas collateral estoppel is considered as a doctrine of "issue preclusion." Id. at 94 n.5.

328; <u>Blonder-Tongue Labs</u>., 402 U.S. at 331.

<u>Peloro v. United States</u>, 488 F.3d 163, 174-5 (3d.Cir. 2007). Stated succinctly, principles of collateral estoppel compel a later court to honor the an earlier decision of a matter that was actually litigated. <u>Dici v. Commonwealth of Pa.</u>, 91 F.3d 542 (3d Cir. 1997). This doctrine, which involves an assessment of the overlap between issues presented in separate lawsuits, raises essentially legal questions which are often amenable to resolution by courts as a matter of law. <u>See, e.g.</u>, <u>Peloro v. United States</u>, <u>supra</u>; <u>Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc</u>, <u>supra</u>; <u>Witkowski v. Welch</u>, 173 F.3d 192, 198-205 (3d. Cir. 1999); <u>Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd.</u>,, 63 F.3d 1227, 1231-9 (3d. Cir. 1995)(summary judgment, offensive issue preclusion).

Here, we find that with respect to the claims made by Davis in the instant complaint the legal requisites for issue preclusion are fully satisfied. " '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " <u>Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co.</u>, 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting <u>In re Graham</u>, 973 F.2d 1089, 1097 (3d Cir.1992)); <u>see also</u> <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 326, n. 5(1979). Therefore, dismissal of this complaint

on *res judicata*, claims preclusion and collateral estoppel grounds is entirely appropriate here.

## 2. Davis' Claims Fail on Their Merits

More fundamentally, Davis' claims fail on their merits. At bottom, Davis seeks to hold these officials liable to him for violating the Eighth Amendment to the United States Constitution. Such claims are measured against exacting standards. The Eighth Amendment's prohibition against cruel and unusual punishment requires corrections personnel to afford "basic medical treatment" to prisoners. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). While the Constitution does not allow inhumane conditions in prisons, Farmer v. Brennan, 511 U.S. 825, 832 (1994), it does not require that prisons be "comfortable." Rhodes v. Chapman, 453 U.S. 337, 349 (1981). A prison official's deliberate indifference to the medical needs of a prisoner constitutes cruel and unusual punishment only when it involves "the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993).

Davis faces an exacting burden in advancing this Eighth Amendment claim against supervisory prison officials in their individual capacities. To sustain such a claim, the plaintiff must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825,

834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.) In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id . at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when officials are deliberately

indifferent to an inmate's serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, the plaintiff is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." <u>Estelle</u>, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Durmer</u>, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally

not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

<u>James</u>, 230 F.App'x. at 197-198.(citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (quoting <u>Bowring v. Godwin</u>, 551 F.2d 44, 48 (4th Cir. 1977)).

There is a necessary corollary to this principle, limiting the reach of the Eighth Amendment in a prison medical setting. In a case such as this, where the plaintiff's complaint reflects that an inmate received some level of on-going medical care, it is also well-established that supervisory correctional staff may not be "considered

deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004).

Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, supervisory staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra; Garvey v.

Martinez, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States. No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007). This rule applies specifically to those prison staff whose involvement in a medical matter consists solely of examining, reviewing and addressing an inmate grievance concerning medical issues. Where non-medical corrections staff simply review a grievance, and refer an inmate to medical personnel, it is clear that "merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." Garvey v. Martinez, 2010 WL 569852, 7 (M.D.Pa. Feb. 11, 2010)(citations omitted); see Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006).

Moreover, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. Quite the contrary, to state a claim the plaintiff must show that the supervisory defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

This deliberate indifference typically cannot be shown simply by alleging that prison officials failed to act favorably upon an inmate's past grievances. Thus, allegations that defendants Thomas and Taggart failed to act favorably upon Davis' June 2012 medical grievance, and instead deferred to medical staff on questions of medical necessity, simply does not state a constitutional tort claim in this specific factual context. An inmate, like Davis, cannot sustain Eighth Amendment claims against prison supervisors based solely upon assertions that these officials failed to adequately respond to his past grievances. Inmates do not have a constitutional right to a prison grievance system. See Speight v. Sims, 283 F. App'x 880 (3d. Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a

constitutional concern."). As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause)

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

Similarly, these supervisory correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993). Rather, correctional staff can, and should, defer to the judgment of medical professional on medical matters. When they do so, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004).

Applying these principles here, we find that in June of 2012, Warden Thomas and Captain Taggart simply declined to favorably act upon Davis' grievance, which would have prescribed a single way for correctional staff to deal with Davis' medical issues in the event of future use of chemical agents in Davis' housing unit. Instead of attempting to prescribe this single course of action, the defendants deferred to medical personnel to assess Davis' future medical needs and instructed him to contact medical staff if he experienced any distress that he attributed to the use of chemical agents elsewhere in the prison. Thus, these supervisory defendants did precisely what the courts have encouraged them to do—they deferred to the judgment of medical staff on matters involving inmate medical concerns. Moreover, when Davis experienced some medical distress after this action on his grievance, medical staff acted properly. Indeed, Davis seems to concede that he contacted medical staff in June 2012 and received appropriate medical care.

On these facts, we cannot say that the actions of defendants Thomas or Taggart—which complied with the dictates of the law—constituted deliberate indifference to Davis' medical needs. Therefore, Davis' claims fail on their merits.

But even if Davis had stated a colorable constitutional claim, the defendants would still be entitled to qualified immunity from these claims for damages. In order to establish a civil rights claim Davis must show the deprivation of a right secured by the United States Constitution or the laws of the United States. Satisfying these

elements alone, however, does not guarantee that Davis is entitled to recover damages from these public officials. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223 (2009). This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted). Qualified immunity:

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. First, the court must evaluate whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If the

defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. Saucier, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. Pearson, 555 U.S. at 232; Saucier, 533 U.S. at 201-02. The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." Wilson, 526 U.S. at 615. The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)). In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 239-40, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).")  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment.  See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In the specific factual context of inmate medical claims, courts have repeatedly held that prison supervisors who respond to inmate medical concerns by deferring to medical staff on medical matters act properly and may not be held personally liable for damages.  See e.g., Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004) Durmer v.

O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993) Garvey v. Martinez, 2010 WL 569852, 7 (M.D.Pa. Feb. 11, 2010)(citations omitted); see also Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006). Given the state of the law in this field, defendants Thomas and Taggart could not have known that their decision to defer to medical experts on medical matters would violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999) Therefore, these officials should be entitled to qualified immunity from damages in this case.

## III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion for summary judgment (Doc. 31.) be GRANTED and, in light of this recommended disposition of the defendants' motion, IT IS FURTHER RECOMMENDED that Davis' motion in opposition to the defendants' motions for summary judgment (Docs. 36.), which is actually simply a response in opposition to that motion, be denied as moot.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written

objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 23d day of July 2013.

***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge